UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. § 3512 FOR ORDER FOR COMMISSIONER'S APPOINTMENT FOR MONEY LAUNDERING INVESTIGATION | ML No: 22-9 |

Reference:   DOJ Ref. # CRM-182-81367

APPLICATION OF THE UNITED STATES FOR AN ORDER
FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Angela S. George, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from Ecuador.  In support of this application, the United States asserts:

RELEVANT FACTS

1.   The Central Authority of Ecuador, the State Prosecution Service, submitted a request for assistance (the Request) to the United States, pursuant to the Inter-American Convention on Mutual Assistance in Criminal Matters, Aug. 27, 1992 – Feb. 28, 2006, S. Treaty Doc. No. 105-25 (the Treaty).

2.   As stated in the Request, the Prosecutor's Office in Pichincha, in Ecuador, is investigating Grekov Dmitri Andreevich (Andreevich), Vasilenko Vadim (Vadim), Vereshchagin

Anton (Anton), Kruglov Oleg (Oleg), and others (hereinafter, the suspects) for money laundering, which occurred between in or about 2010 and 2018, in violation of the criminal laws of Ecuador, specifically, Section 317 of the Comprehensive Organic Criminal Code.  Under the Treaty, the United States is obligated to assist in response to the Request.

3. According to Ecuadorian authorities, from 2010 to 2018, the suspects, Russian citizens and members of a drug trafficking organization, transferred funds with the intent of hiding the illegal source of the funds.  Specifically, Ecuadorian authorities assert that the purpose of the money laundering scheme is to introduce money from illicit activities into Ecuador's National Financial System through money transfers and remittances from foreign companies and individuals to the bank accounts of the suspects and the Ecuadorian realty company Nolan & Kruglova Investments Nolkrug S.A. (NKIN) held at Banco Pichincha of Ecuador (BPE) in Ecuador.  Andreevich and Oleg are allegedly the leaders of the organization, and Vadim and Anton are allegedly responsible for laundering funds by making several bank transfers.

4. In 2015, Ecuadorian authorities began an investigation into the alleged money laundering conduct of the suspects.  During the investigation, the Ecuadorian Financial Analysis Unit conducted a review of the suspects' financial profiles and issued an Unjustified Unusual Operations Report (ROII).  The ROII revealed that Andreevich, Oleg, Vadim, and Anton had amounts of funds in their BPE accounts that were inconsistent with or unjustified by their economic profiles recorded with the Internal Revenue Service in Ecuador.  Specifically, Andreevich declared income of 3,666 USD from labor activities performed in the private sector while simultaneously reporting income of approximately 2,095,471 USD in his BPE accounts. Vadim declared no income or economic activity with the Internal Revenue Service in Ecuador, yet he reported income of 243,452 USD in his bank accounts.  Anton declared no income or

activity with the Internal Revenue Service in Ecuador. However, Ecuadorian authorities discovered that he reported income of approximately 1,539,971 USD in his BPE accounts. Oleg declared income of approximately 17,102 USD with the Internal Revenue Service and reported 58,857 USD of income in his BPE accounts.

5. Additionally, the ROII revealed that Vadim cashed checks that were issued by Andreevich, Ecuadorian authorities have not been able to ascertain why the checks were issued. Between February 2010 and February 2015, Andreevich, with no identifiable business purpose, received 1,284,133 USD in 312 money orders from 15 foreign payers. Each money order was in the amount of approximately 4,500 to 4,800 USD or less.

6. NKIN was established by Kruglova Liubov (Liubov) and Mr. Fernandez de Cordova Carvajal Ricardo. In 2009, Liubov, a majority shareholder, transferred 99% of her NKIN shares to Oleg, Liubov's husband.

7. In 2010, NKIN received foreign wire transfers in the amount of 90,950 USD from Intercontinental Trade & Services S.A. (ITS), a Panamanian company. The funds were transferred from ITS's bank account, account number XXXXXXXXXXXX7060, held at HSBC Bank (HSBC) in the United States. Additionally, NKIN received funds in the amount of 9,425 USD from Technocash Limited (TL), an Australian financial services company that provides global funds transfer services. The 9,425 USD transfer originated from a bank account, account number XXXXXXXX9721, held at Westpac Financial Services Company (Westpac) in New York in the United States.

8. In 2012, Popkov Pavel (Pavel), a shareholder of ITS, received two checks issued by NKIN, totaling 18,000 USD. Ecuadorian authorities have not been able to identify a legitimate commercial or business relationship between the two companies that would explain

why the checks were issued by NKIN to Pavel.

9. Ecuadorian authorities assert that the unjustified, inconsistent economic profiles of the suspects, unexplained issuance of checks by and money order remittances to Andreevich, and the unexplained wire transfers involving NKIN, Oleg's company, indicates that the suspects are involved in money laundering.

10. To further the investigation, Ecuadorian authorities have asked U.S. authorities to provide bank records pertaining ITS's HSBC bank account, account number XXXXXXXXXXXX7060, and the Westpac bank account, account number XXXXXXXX9721, in the United States.

## LEGAL BACKGROUND

11. A treaty[1] constitutes the law of the land. U.S. Const. art. VI, cl. 2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968). A multilateral convention is a treaty under U.S. law.

12. When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court

---

[1] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> \*      \*      \*
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> \*      \*      \*
>
> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

13.   Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2] This section provides clear authority for the federal courts, upon application duly

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities. See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782). When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations. See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

14.     An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[3] has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[4]  Upon such a duly authorized application, Section 3512 authorizes a federal judge[5] to issue "such orders as may be necessary to execute [the] request," including:  (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things.  See 18 U.S.C. § 3512(a)(1)--(b)(1).  In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence.  18 U.S.C. § 3512(a)(1).

15.     Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents.  The appointed person has authority to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2)

---

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[4] "Section 3512 can be invoked only when authorized by OIA. . . .  Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA."  Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

[5] The term "federal judge" includes a magistrate judge.  See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

administer any necessary oaths; and (3) take testimony or statements and receive documents or other things. 18 U.S.C. § 3512(b)(2). In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena." Any such subpoena may be served or executed anywhere in the United States. 18 U.S.C. § 3512(f).

## REQUEST FOR ORDER

16. The Office of International Affairs has reviewed and authorized the Request and is executing the Request itself. Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512. In addition, the Request was submitted by an appropriate "foreign authority," the State Prosecutor General Office, the designated Central Authority, in Ecuador and seeks assistance in the investigation of embezzlement – a criminal offense in Ecuador. The requested Order is necessary to execute the Request, and the assistance requested, i.e., production of bank records, falls squarely within that contemplated by Section 3512 and the Treaty. Finally, this application was properly filed in the District of Columbia.

17. This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters. In this matter, Ecuador has asked the Government to keep the Request confidential.

18. When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Treaty authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to

any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512 and and the applicable treaty likewise should require no notice other than to the recipients.  This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance.  Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987).  Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner subpoena.

19.     Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Angela S. George, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the intended use of the evidence and authorizing the undersigned to order the relevant person(s) and/or entity(ies) not to notify any person(s) or entity(ies) of the commissioner's subpoena and its contents for a period of two years from the Court's Order, and sealing this application and the Court's Order, until otherwise issued by the Court.

        Respectfully submitted,

        VAUGHN A. ARY
        DIRECTOR
        OFFICE OF INTERNATIONAL AFFAIRS
        OK Bar Number 12199


By:    */s/ Angela S. George*
        Angela S. George
        Trial Attorney
        D.C. Bar Number 470567
        Office of International Affairs
        Criminal Division, Department of Justice
        1301 New York Avenue, N.W.
        Washington, D.C. 20530
        (202) 514-4653
        Angela.George@usdoj.gov